UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENSON M. SALES, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UNITED ROAD SERVICES, INC., et al.,<br><br>　　　　Defendants. | Case No. 19-cv-08404-JST<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEY'S FEES**<br><br>Re: ECF Nos. 122, 143 |

Before the Court are Named Plaintiffs Robert Bejar's and Martin Chavez's unopposed motion for final approval of a class action settlement, ECF No. 143, and unopposed motion for attorney's fees and costs, ECF No. 122. The Court will grant the motions.

**I.　BACKGROUND**

　　**A.　Factual Background**

Named Plaintiffs bring this class action against Defendant United Road Services, Inc. ("URS") alleging violations of California's labor code and unfair competition law. ECF No. 90. They represent a class of "[a]ll individuals who signed Independent Contractor Service Agreements with URS, who were assigned to a business unit in California, and who drove in California at any time from November 18, 2015 to [March 29, 2022]." ECF No. 53 at 14–15.

Drivers for URS must sign a contract titled the Independent Contractor Service Agreement, which classifies them as independent contractors. *See id.* at 1. Plaintiffs contend that the drivers actually act as URS's employees, not as independent contractors, and that drivers are entitled to the benefits and protections extended to employees under California law. ECF No. 90 ¶¶ 1–12.

　　**B.　Procedural Background**

In November 2019, Denson M. Sales filed this lawsuit in Alameda County Superior Court

on behalf of himself and other truck drivers who contract with URS as independent contractors to haul vehicles for customers throughout Canada and the United States.[1]  ECF No. 1-1.  URS removed the action to this Court one month later.  ECF No. 1.

The Court granted URS's motion to dismiss Plaintiffs' meal-and-rest-break claims on July 17, 2020.  ECF No. 32.  On April 29, 2021, Plaintiffs moved for class certification.  ECF No. 41.  On March 29, 2022, this Court certified the proposed class to pursue the following claims: (1) failure to reimburse business expenses, in violation of California Labor Code § 2802; (2) failure to pay all straight time wages at the statutory minimum wage; (3) failure to properly itemize wage statements, in violation of California Labor Code § 226; (4) failure to pay all wages due at termination, in violation of California Labor Code § 203; and (5) violation of California's unfair competition law, Bus. & Prof. Code § 17200.  ECF No. 53.  The Court appointed Denson M. Sales and Andre Clemons as co-class representatives, *id.* at 4, and approved Mara Law Firm and Hunter Pyle Law as co-class counsel, *id.* at 14.  Discovery began in fall 2022.

On May 18, 2023, Plaintiffs filed a Second Amended Complaint adding Robert Bejar and Martin Chavez as named plaintiffs and class representatives.  ECF No. 90.  Defendants answered the amended complaint on June 9, 2023.  ECF No. 92.

The parties attended a formal mediation with retired judge Jeffrey Ross on November 4, 2021, and reached a settlement in principle.  ECF No. 143 at 11.  Negotiations continued thereafter until the parties executed a written settlement agreement on June 21, 2023.  ECF No. 93 at 3.  The parties filed a notice of settlement on June 28, 2023.  ECF No. 93.

Bejar and Chavez filed a motion for preliminary approval of the proposed settlement on August 31, 2023, ECF No. 95, which the Court granted on September 26, 2023, ECF No. 98.  The Court received twenty-nine objections to the proposed settlement from class members, five of whom have since withdrawn their objections, leaving twenty-four.[2]  Named Plaintiffs Sales and

---

[1] In April 2020, the Court related this action with *Andre Clemons v. URS Midwest, Inc.*, Case No. 20-CV-02274.  *See* ECF No. 19.  The Court then granted a stipulation by the parties that had the "practical effect" of consolidating the two cases.  ECF No. 22.

[2] *See* ECF Nos. 100, 101, 102, 103, 104, 105, 107, 109, 110, 111, 112, 113, 117, 118, 119, 120, 121, 123, 126, 129, 130, 134, 136, 138 (objections from class members); *see also* ECF Nos. 99, 106, 108, 127, 133 (objections from non-class members).  One class member who filed an

2

Clemons were among the objectors. ECF Nos. 101, 102. The Court held a final approval hearing on March 7, 2024. On April 9, 2024, the Court granted Plaintiffs' Counsel's motion to withdraw from representing Clemons and Sales.³ ECF No. 151.

### C. Terms of Settlement

The Joint Stipulation of Settlement and Release of Class Action Claims ("Joint Stipulation"), ECF No. 143-1, resolves the claims between URS and the class, defined as:

> All individuals who signed Independent Contractor Service Agreements with URS, who were assigned to a business unit in California, and who drove in California at any time from November 18, 2015 to March 29, 2022. If the individual executing the Independent Contractor Service Agreement did so on behalf of a corporation or LLC, then the individual or individuals who were principals or owners of the corporation or LLC.

ECF No. 143-1 at 27 ¶ 5.

The Joint Stipulation provides that Plaintiffs will release the following class claims:

> All claims that were plead in the Second Amended Complaint, including claims for unpaid minimum wages under Cal. Lab. Code §§ 558, 1182.1-1182.3, 1194, 1194.2, 1197, and 1198; unpaid meal and rest breaks under Cal. Lab. Code §§ 558, 226.7, and 512, Cal. Code Regs., tit. 8 § 11090, and IWC Wage Order No. 9-2011; failure to reimburse/illegal deductions under Cal. Lab. Code §§ 221 and 2802, and Cal. Regs., tit. 8 § 11090; related claims under California Labor Code §§ 201-3, 226, 204, 210; and claims for unlawful business practices under the California Business and Professions Code §§ 17200, *et seq.*, as alleged in the Second Amended Complaint.

*Id.* at 31 ¶ 34.

In addition, the Joint Stipulation provides for the release of the following PAGA claims:

> All claims asserted in the Operative PAGA letter and/or the Second

---

objection withdrew it in advance of the final approval hearing, ECF No. 140 (withdrawing objection at ECF No. 125). Four additional class members withdrew their objections after the final approval hearing. *See* ECF Nos. 148 (withdrawing objection at ECF No. 128), 149 (withdrawing objection at ECF No. 114); 150 (withdrawing objection at ECF No. 115), 152 (withdrawing objection at ECF No. 116).

³ Because Sales and Clemons lacked other counsel, the withdrawal rendered them inadequate as class representatives. *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) (holding that "a litigant appearing in propria persona has no authority to represent anyone other than himself"); *Cevallos v. City of Los Angeles*, 914 F. Supp. 379 (C.D. Cal. 1996) ("It is well established that a layperson ordinarily cannot represent the interests of a class of other plaintiffs."). As discussed below, they were replaced by new representatives.

>Amended Complaint, including claims for unpaid minimum wages under Cal. Lab. Code §§ 558, 1182.1-1182.3, 1194, 1194.2, 1197, and 1198; failure to pay wages due for missed meal and rest breaks under Cal. Lab. Code §§ 226.7, and 512; failure to reimburse/illegal deductions under Cal. Lab. Code § 2802; and related claims under California Labor Code §§ 201-203, 204, 210, and 226, 226.3, and 226.8. The Released PAGA Claims shall be for the PAGA Period.

*Id.* at 31 ¶ 35.

In exchange, URS agrees to pay $7,500,000 ("Gross Settlement Amount"). *Id.* at 36 ¶ 1. In addition to funding the class's recover, the Gross Settlement Amount ("GSA") will be used to pay: (a) any attorney's fees awarded by the Court; (b) any litigation expenses awarded by the court; (c) notice and administration costs; and (d) the 75% portion of the PAGA Payment due to the California Labor and Workforce Development Agency ("LWDA"). *Id.* Plaintiffs request $1,875,000 in attorney's fees, which constitutes 25% of the GSA. *Id.* at 36 ¶ 2; *see* ECF No. 122 at 8. They also seek $27,320.60 for reimbursement of litigation costs and $11,000 in administration costs for Phoenix Settlement Administrators ("Phoenix"). ECF No. 143 at 11–12. The LWDA's 75% share of the $126,325 PAGA Payment amounts to $94,743.75. *Id.* at 12. Accordingly, after Plaintiffs' proposed deductions, the Net Settlement Amount ("NSA") would stand at $5,460,354.40. The NSA will then be disbursed to the class according to the plan of allocation.

Under the proposed plan of allocation, class members who do not request to opt out of the settlement ("Class Participants") will receive a payment drawn from the NSA on a pro rata basis based on the number of weeks they worked for URS during the relevant timeframe as well as the total number and value of other Class Participants' shares. ECF No. 143-1 at 36 ¶ 1(b).

Payments to PAGA Aggrieved Individuals[4] are calculated in the same manner. The Joint Stipulation allocates $126,325 of the GSA to "civil penalties recoverable under PAGA, of which 75%, or $94,743.75, will be paid to the LWDA; and 25%, or $31,581.25, will be distributed among PAGA Aggrieved Individuals." *Id.* at 37 ¶ 4. Each PAGA Aggrieved Individual will receive a pro rata share of the $31,581.25 PAGA Payment based on the number of weeks they

---

[4] "PAGA Aggrieved Individuals are Class Members that worked at any time during the PAGA Period." ECF No. 143 at 8.

4

worked for URS during the relevant timeframe, as well as the total number and value of other individuals' shares. *Id.* at 39 ¶ 1(b).

URS previously remitted $10,000 from the GSA to the Settlement Administrator as a partial payment for its services. *See id.* at 38 ¶ 7. URS will transfer the balance of the GSA to the Settlement Administrator within thirty days after the Settlement's Effective Date. *See id.* at 38 ¶¶ 7–8. The Effective Date occurs after all the following events:

> (a) the Joint Stipulation has been fully executed; (b) the Court has given preliminary approval to the settlement; (c) notice has been given to the Class Members providing them with an opportunity to opt-out of the settlement; (d) if more than 10% of the Class Members opt-out, URS has elected not to exercise its rights to void the settlement; (e) the Court has held a Final Approval and Fairness Hearing and entered a final order and judgment approving the Joint Stipulation; and (f) the later of the following dates: (i) when the period for filing any appeal, writ, or other appellate proceeding having been filed; or (ii) any appeal, writ, or other appellate proceeding opposing the settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or (iii) any appeal, writ, or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the settlement shall not become effective until the Court's order approving the settlement is completely final and there is no further recourse by an appellant or objector who seeks to contest the settlement.

*Id.* at 28 ¶ 15.

Funds from uncashed checks will be sent to the California State Controller's Unclaimed Property Division with information about the Class Participant to whom the funds belong. *Id.* at 41 ¶ 5. Class Participants who did not cash their settlement checks may then collect their shares from the California State Controller. *Id.*

## II.   LEGAL STANDARD

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at

1026. "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *Becker v. LISI, LLC*, 2022 WL 19975411 (N.D. Cal. Sept. 1, 2022) (citing *Hanlon*, 150 F.3d at 1027). In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[5]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Furthermore, Rule 23 requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

### A. CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C § 1715(b). CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b). *Id.* § 1715(d). Defendants mailed the CAFA notices over 90 days ago. *See* ECF No. 96.

---

[5] The Court does not consider the seventh factor in this case because there is no governmental participant.

6

## III. DISCUSSION

### A. Final Approval of Settlement

For the reasons that follow, the Court will grant final approval of the settlement.

#### 1. Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan with certain modifications when it granted preliminary approval. ECF No. 98 at 2, 4. Under the approved notice plan, Plaintiffs retained Phoenix as the settlement administrator. *Id.* at 4. URS sent a list of class members and their contact information to Phoenix, which obtained current mailing addresses for as many class members as possible. ECF No. 143-2 ¶¶ 3–4. On November 3, 2023, the Notice of Class Action Settlement ("Class Notice") was mailed and e-mailed to class members in English and Spanish. *Id.* ¶ 5. Nineteen class notices were returned to Phoenix as undeliverable with no forwarding address. Using skip tracing, Phoenix found updated addresses for fifteen of these notices and remailed them. *Id.* ¶ 6. Four notices remained undeliverable because skip tracing did not produce an updated address. *Id.* ¶ 7. The deadline for class members to object to or opt out of the settlement was January 5, 2024. *Id.* ¶ 8–9. Thirty-four individuals objected, twenty-four of whom are class members who have not since withdrawn their objections. *See* ECF No. 143 at 9–10. No class members opted out of the settlement. ECF No. 143-2 ¶ 8.

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which

7

was "consistent with the requirements of Rule 23 and due process.").

### 2. Fairness, Adequacy, and Reasonableness

#### a. Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, the Court already certified a class under Rule 23(b)(3). ECF No. 53. "Thus, 'the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.'" *Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *3 (N.D. Cal. Feb. 11, 2022) (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment). Because the class representatives have changed since certification, the Court considers whether new representatives Bejar and Chavez are adequate representatives. *See* Fed. R. Civ. P. 23(a)(4).

Class representatives Bejar and Chavez were added to the complaint after class certification. ECF No. 90. At that time, the Court approved the parties' stipulation that Chavez and Bejar "[we]re adequate class representatives pursuant to FRCP No. 23(a) in that they signed Independent Contractor Service Agreements with [URS], were assigned to a business unit in California, and drove in California between November 18, 2015, and March 29, 2022; understand their duties to the Class Members; and have no conflict with the Class Member[s]." ECF No. 89 at 3. Several objecting class members submitted identical form letters stating that Bejar and Chavez were added "without the support of the initial class representatives or [a] majority [of] class members," and complained that Bejar and Chavez supported a settlement the objectors disagree with, but the objectors did not argue that Bejar and Chavez are inadequate representatives. *See, e.g.*, ECF No. 101.

The Court finds that Bejar and Chavez are adequate representatives, that the Court's prior conclusion regarding the adequacy of class counsel remains sound, and that this factor weighs in

favor of approval.

        **b.**  **Strength of Plaintiff's Case and Risks of Litigation**

   Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

   Plaintiffs here acknowledge that they face significant obstacles if the case were to proceed toward trial. ECF No. 143 at 19–31. Defendants continue to dispute the existence of an employee relationship and to contend that class members received enhanced compensation to cover expenses incurred in the course of their duties. *Id.* at 19–28. Developments in caselaw since the commencement of this action have also cast doubt on whether Plaintiffs' interpretation of the law would prevail. *Id.* at 28. The Court finds that these acknowledged weaknesses weigh in favor of approving the settlement. *See Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *6 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement because plaintiff admitted that it would face hurdles in establishing class certification, liability, and damages). Additionally, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

      **3.**  **Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements**

   The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Net Settlement Amount will be allocated to Class Participants and PAGA Aggrieved Individuals on a pro rata basis based on an estimate of each class member's injury. ECF No. 143-1 at 36 ¶ 1(b), 39 ¶ 1(b). Each class member received notice regarding how the shares of the settlement are calculated. ECF No. 143-2 at 9.

   The Court has also evaluated in detail "the terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), in connection with Class Counsel's motion for fees and costs. Class Counsel requests an attorney's fee that is 25% of the NSA, which is the prevailing benchmark for percentage fee awards in the Ninth Circuit. ECF No. 122 at 8; *see In re Online*

9

*DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). This amount is presumptively reasonable and, as set forth below, will be approved.

Accordingly, the Court finds that this factor weighs in favor of approval.

### 4. Equitable Treatment of Class Members

Because Rule 23 instructs courts to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court examines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The calculation of Class Participants' payments depends on the number of weeks worked between November 18, 2015, and March 29, 2022, proportionate to the number and week counts of other Class Participants. ECF No. 143-1 at 36 ¶ 1(b). The Court finds that this approach treats class members equitably and that this factor supports approval. *See Hefler*, 2018 WL 6619983, at *8; *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2019) (finding equitable to class members an allocation based on pro rata distribution).

### 5. Settlement Amount

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)–(D) Advisory Committee's Note to 2018 Amendment. The Court therefore examines "the amount offered in settlement." *Hanlon*, 150 F.3d at 1026.

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. But "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (quoting *Officers for Just.*, 688 F.2d at 628).

Here, the $7,500,000 settlement fund achieves a reasonable result for the class. The settlement amount represents 8% of Class Counsel's estimated $92,667,754 maximum total damages if the class were to prevail on all issues. *See* ECF No. 95 at 41. While this is at the low

end of recoveries the Court would deem reasonable, counsel identified risks of continued litigation at the final approval hearing that, in combination with the usual risks of prosecuting a case of this kind, make the recovery fair.

### 6. Extent of Discovery

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (quotation marks and citation omitted). A greater amount of completed discovery, however, supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *Chun-Hoon*, 716 F. Supp. 2d at 852. Here, the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement. ECF No. 143 at 38–39 (describing discovery efforts including reviewing document productions, deposing witnesses, and briefing motions); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1042 (finding that parties who had engaged in discovery, taken depositions, briefed motions, and participated in mediation were sufficiently informed about the case prior to settlement). This factor weighs in favor of approval.

### 7. Counsel's Experience

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. That counsel advocate in favor of this Settlement weighs in favor of its approval.[6]

### 8. Reaction of the Class

Finally, the Court considers the class's reaction to the settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted). Nonetheless, "[a] settlement is not unfair simply because a large number or a certain percentage of class members

---

[6] The Court places little weight on this factor because "the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (Am. Law. Inst. 2010).

11

oppose it, as long as it is otherwise fair, adequate, and reasonable." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979). "Nor should a settlement be rejected merely because class plaintiffs oppose it." *Id.*

Twenty-four class members, or approximately 8% of the class, objected to the settlement. *See* ECF No. 143 at 16–17. No class members opted out of the settlement, however, making the class participation rate 100%. *Id.* at 16.

The objections were substantively identical; each objecting class member signed a copy of the same form letter expressing concern about various aspects of the settlement. First, the objectors argued that "[t]he gross settlement amount offered does not represent the minimum wages owed to approximately 309 plaintiffs in accordance [with] defendant's uniform payment policy of paying approximately 309 plaintiffs 80% of the revenue defendant receives for hauling a load; plus, additional expenses such as insurance, fuel, damages, truck maintenance, pain and suffering." *E.g.*, ECF No. 101. That the settlement does not achieve 100% of the expected outcome at trial is not a reason to disapprove it. When evaluating a settlement's fairness, the Court must account for the risk that the class would recover less or nothing at all if litigation continued. *See Officers for Justice v. Civil Serv. Com.*, 688 F.2d at 624 ("[T]he very essence of a settlement is compromise . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . .") (internal quotation marks and citations omitted); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (explaining that a proposed settlement may be fair, adequate, and reasonable even though a greater recovery might have been possible at trial).

The Objectors' second argument is that "[t]he defendant or class counsel failed to disclose the revenue information (OVISS information) that the defendant received for hauling a load to substantiate the amount owed to approximately 309 plaintiffs in accordance to the uniform payment policy, which does not substantiate the gross settlement amount." *E.g.*, ECF No. 101. Class Counsel counter that this information is not relevant to the claims being settled in this case. ECF No. 143 at 20. The Court finds that the objectors have not shown how this information

12

1 would be necessary to achieve a fair and adequate settlement.

2 Third, the objectors argue that the motion for preliminary approval did not explain how the parties reached the settlement. The motion for preliminary approval adequately explains the procedural history of the case, including the settlement negotiations. ECF No. 95 at 10–12.

The objectors next ask the Court to reject the settlement because "Class Counsel failed to provide all of the documentation in the Joint Stipulation of settlement; specifically, Exhibit I[,] which is not in the best interest of the class." *E.g.*, ECF No. 101. The Court finds that Class Counsel has submitted all necessary documentation to allow the Court and the class to examine the fairness of the proposed settlement.

Next, objectors contend that the settlement is not in the best interests of the class because neither the original named plaintiffs nor a majority of the class agreed to the amendment of the complaint to add Robert Bejar and Martin Chavez as class representatives. Class Counsel was not required to obtain approval from class representatives or from a majority of the class before adding class representatives. Rather, "[n]umerous courts have held that class counsel has a duty to do what is in the best interests of the class, even if some class representatives disagree." *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *12 (C.D. Cal. May 7, 2009) (collecting cases).[7]

Although they comprise 8% of the class, the objections received in this case do not cast doubt on the fairness, adequacy, or reasonableness of the settlement. "[T]he important aspect is not the number of objectors, but the content of their objections." *Id.* (citation omitted). The Court overrules the objections and finds that the balance of the factors outlined in *Churchill Village* weighs in favor of final approval.

**B.     Attorney's Fees and Costs**

**1.     Attorney's Fees**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' argument, . . . courts have an independent obligation to ensure

---

[7] Objectors' last two grounds for objection echo the fifth: they assert that the settlement is not in the best interests of the Class because they believe it was entered into without the support of a majority of class members or all class representatives.

that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorney's fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.*

The Ninth Circuit maintains a "benchmark for an attorneys' fee award in a successful class action [of] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25% benchmark and adjust upward or downward depending on counsel's performance and the risks attendant to the litigation. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Additionally, courts often crosscheck the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Regardless of the method of calculation, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

### a. Percentage of Recovery

Class Counsel requests that the Court award them 25% of the $7,500,000 settlement, i.e., the sum of $1,875,000. The request is presumptively reasonable, and no facts of which the Court is aware require an upward or downward adjustment.

### b. Lodestar Cross-Check

Courts often cross-check the amount of attorney's fees using the lodestar method.

1    "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation,
2    provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.
3    When conducting a lodestar cross-check, a court takes "the number of hours reasonably expended
4    on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433
5    (1983). "[T]he determination of fees 'should not result in a second major litigation'" and "trial
6    courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563
7    U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). Rather, the courts seek "to do rough
8    justice, not to achieve auditing perfection." *Id.*

9    A district court must "exclude from this initial fee calculation hours that were not
10   'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted). Additionally, the reasonable
11   hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees"
12   as well as "the rate prevailing in the community for similar work performed by attorneys of
13   comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205,
14   1210-11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). "[T]he
15   burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in
16   line with those prevailing in the community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11
17   (1984).

18   Class Counsel states that their hourly rates range from $450 to $900. ECF No. 122 at 15.
19   Those rates are reasonable in this district. *See, e.g.*, *In re High-Tech Employee Antitrust Litig.*,
20   2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (awarding attorney's fees that ranged from
21   $310 to $800 for associates and partners rates from $480 to $975); *Banas v. Volcano Corp.*, 2014
22   WL 7051682, at *5 (N.D. Cal. 2014) (finding rates ranging from $355 to $1,095 per hour for
23   associates and partners within the range of prevailing rates). Counsel expended 1,925.8 hours on
24   this matter, ECF No. 122 at 16, which is reasonable for a case of this complexity and duration: the
25   case was filed in November 2019 and included a motion to dismiss, class certification, mediation,
26   and settlement. Counsel incurred $1,349,250 in fees, which results in a lodestar multiplier of 1.4.
27   *See* ECF No. 122 at 13. "[M]ultiples ranging from one to four are frequently awarded in common
28   fund cases when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

15

1051 n.6 (9th Cir. 2002) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)).  The 1.4 multiplier is reasonable in this case.

### 2.     Reimbursement of Costs

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  At the time of preliminary approval, the Court conditionally approved up to $50,000 in costs.  ECF No. 98 ¶ 14.  Class counsel seeks $27,320.60 in costs.  ECF No. 122 at 18.  After reviewing documentation of the costs incurred during this litigation, the Court finds the charged costs reasonable.  *See* ECF Nos. 122-1 at 10, 122-2 at 8.  The Court therefore holds that class counsel is entitled to reimbursement of $27,320.60.

### 3.     Settlement Administrator Award

The Court finds that the maximum settlement fund administrator costs of $11,000 set forth in the Joint Stipulation are reasonable.  According to the settlement administrator, the fees and costs incurred stand at $11,000.  ECF No. 143-2 ¶ 15.  The Court approves reimbursement in the amount of $11,000.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' motion for final approval of the class action settlement.  ECF No. 143.  The Court also grants Plaintiffs' motion for attorney's fees, litigation costs, and settlement administrator award.  ECF No. 122.  Class Counsel is entitled to $1,875,000 in attorney's fees and $27,320.60 in litigation costs.  The settlement administrator is entitled to $11,000.  The parties and settlement administrator are directed to implement this order and the Joint Stipulation in accordance with their terms.

Class counsel shall file a post-distribution accounting within 21 days after the distribution of settlement funds.  In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements, the post-distribution accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in

settlement administration since final approval, and how any concerns or issues were resolved.  The Court will withhold 10% of the attorney's fees granted in this order until the post-distribution accounting has been filed.  Class counsel shall file a proposed order releasing the remainder of the fees when they file their post-distribution accounting.

This matter is set for a further case management conference on January 14, 2025, at 2:00 p.m.  An updated joint case management statement is due by January 7, 2025.  The parties may request that the case management conference be continued if additional time is needed to complete the distribution.  The conference will be vacated if the post-distribution accounting has been filed and the Court has released the remaining attorney's fees.  The parties shall submit a stipulated proposed form of judgment within 14 days of this order.

**IT IS SO ORDERED.**

Dated:  September 11, 2024



JON S. TIGAR
United States District Judge